UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RUSSELL L. RIDGEWAY, No. 00-B-1571,

        Petitioner,

      -v-                        05-CV-0363(MAT)
                                         **ORDER**
ANTHONY ZON, Supt.,
Wende Correctional Facility

        Respondent.
_____

## I.   Introduction

Petitioner Russell Ridgeway ( "petitioner") has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction of two counts each of Rape in the First Degree (N.Y. Penal Law § 130.35[3]), Sexual Abuse in the First Degree (Penal L. § 130.65[3]), and one count of Sodomy in the First Degree (Penal L. § 130.50[3]) following a jury trial in Niagara County Court before Judge Robert C. Noonan on May 26, 2000. He was sentenced to fifteen years (determinate) on the rape and sodomy charges, and seven years (determinate) for the sexual abuse, all to run concurrently. Petitioner is presently incarcerated at Wende Correctional Facility in Alden, New York.

## II.  Factual Background and Procedural History

Petitioner is the father of the victim, who was eight-years-old at the time of the alleged abuse.  The victim's aunt, JoAnne Jefferson ("Jefferson"), had full custody of the victim beginning

in July 1995, when the victim's mother passed away. Jefferson relocated from Niagara Falls to Batavia, New York, with the victim in 1998. Between 1995 and 1999, visitation between petitioner and his daughter was sporadic. Upon the victim's request, arrangements were made for the victim to stay with her father and grandmother at their separate residences in Niagara Falls for the summer of 1999. The victim resided with her father from June 25, 1999, until late August of that year. T. 260-70.[1]

Jefferson testified at trial that approximately four weeks after the victim returned to Batavia from Niagara Falls, on two occasions, she would not sit down in her bath because the water was too hot. She also "acted out with her stuffed animals" by "humping" on them. As a result, Jefferson called the Rape Crisis Center in Batavia. Over petitioner's objection, the trial court permitted Jefferson to testify to statements made to her by the victim after she returned from her father's house. Jefferson testified that the victim told her that her father did "bad things" to her with his "private". The court allowed the statements under the "prompt outcry" exception to the hearsay rule, and gave a limiting instruction. T. 270-82.

The victim testified as a sworn witness at trial. She recounted four instances where her father had sexual contact with her, including vaginal and anal penetration, and sexual touching.

_____

[1] Citations to "T.__" refer to the trial transcript.

During one such encounter, the victim recalled that petitioner licked her ear with his tongue. After the same incident, petitioner went into the bathroom and, returning with a washcloth, proceeded to wipe off the victim's "front private", pull up her underpants, and return her to bed. T. 323-24, 328-58, 365.

Dr. Jack Coyne, M.D. ("Dr. Coyne") testified that he examined the victim after the incident with her father on October 18, 1999. He had also examined her following another, unrelated, incident of abuse when the victim was four-years-old.[2] In the latter examination, he found a loss of integrity of the hymen, which was related to the 1995 exam, and redness to the vulva. The rim of the hymen was "rolled", which, he testified, can be normal in a child the victim's age or can be a result of trauma to the area. Finally, the rectal examination revealed a skin tag that was consistent with trauma to the area occurring approximately four weeks prior to the time of the examination.[3] Other findings included discharge, foul odor, and redness of the vulva, which, he testified, could be caused by any number of factors but were also consistent with sexual abuse. Dr. Coyne concluded that the findings were "most consistent" with the victim's history of sexual abuse. Semen or

[2] The victim had allegedly been sexually assaulted by a teenaged cousin when she was four-years old. A report was filed and a medical examination was conducted, but no charges were ever filed due to the victim's age and inability to identify her abuser. T. 381-82.

[3] The doctor noted that the skin tag was similar to a finding of a skin tag in another location in the 1995 exam, and was uncertain if there was any relationship between the two findings. T. 442.

other positive cultures relating to the perpetrator were not present. T. 425, 428-29, 430, 433, 435, 442, 445.

Petitioner testified in his own behalf at trial. He stated that he had dated the victim's mother, who died of cancer in 1995, "on and off for a couple of years." Petitioner admitted not seeing his daughter between 1992 and 1995 after he married a woman from Toronto and moved out of state. When the petitioner returned to Niagara Falls during the years 1997 and 1998, petitioner saw his daughter every other weekend, usually in the presence of the victim's paternal grandmother, until the victim moved to Batavia with Jefferson in 1998. He admitted that after the victim moved, he never sought custody of his daughter.[4] He acknowledged that he and Jefferson did not get along, and claimed that Jefferson would not allow petitioner to contact his daughter. Petitioner steadfastly denied any sexual contact with the victim. T. 453-54, 463-65.

Petitioner, through counsel, appealed his conviction to the Appellate Division, Fourth Department, which unanimously affirmed the conviction. People v. Ridgeway, 295 A.D.3d 879 (4th Dept.), lv. denied 98 N.Y.2d 713 (2002). A post-conviction application for writ of *error coram nobis* and New York Crim. Proc. Law ("C.P.L.") § 440 motions were denied on the merits. He then filed a petition for

---

[4] Petitioner's contact with his daughter was so limited that he was unaware that she had undergone four surgeries to remove multiple neurofibromas from her face and mouth, which caused visible scarring on her skin. T. 427.

writ of habeas corpus pursuant to 28 U.S.C. § 2254 with this Court, raising ten grounds for relief. (Dkt. #1). For the reasons that follow, the petition for habeas corpus is denied and the action is dismissed.

## III. General Principles Applicable to Federal Habeas Review

### A.    Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant

state-court decision. <u>Williams</u>, 529 U.S. at 412; <u>accord</u> <u>Sevencan v.</u> <u>Herbert</u>, 342 F.3d 69, 73-74 (2d Cir. 2002), <u>cert. denied</u>, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>id.</u> at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." <u>Aparicio v.</u> <u>Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner,</u> 337 F.3d 175, 181 (2d Cir.) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u>

Parsad v. Fischer, 540 U.S. 1091, 124 S.Ct. 962 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984). "The exhaustion requirement is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Jimenez v. Walker, 458 F.3d 130, 148-149 (2d Cir. 2006) (internal citations and quotation marks omitted).

**C.    The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" <u>Dunham v. Travis</u>, 313 F.3d 724, 729 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." <u>Id.</u> (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995); <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to *bar consideration* on federal habeas of federal claims that have been defaulted under state law,'" <u>id.</u> (quoting <u>Lambrix v. Singletary</u>, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be[,]'" <u>id.</u> (quoting <u>Lambrix</u>, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issue] are easily resolvable against the habeas

petitioner, whereas the procedural-bar issue involved complicated issues of state law")).

## IV. Merits of the Petition

### A.  Weight and Sufficiency of the Evidence

In Grounds One and Two of his petition, petitioner alleges that the prosecution failed to prove each and every element of the charge beyond a reasonable doubt, and that the verdict was against the weight of the evidence.[5] Pet. ¶ 22(A)-(B). (Dkt. #1). Specifically, petitioner contends that the medical evidence offered by the prosecution was inconclusive because Dr. Coyne could not state with a medical degree of certainty that penetration occurred. Pet. ¶ 22(A).

A petitioner who challenges the sufficiency of the evidence to support his conviction bears a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir.), cert. denied, 514 U.S. 1136 (1995). A conviction will be found to be supported by sufficient evidence if, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

[5] The Court notes that weight of the evidence claims derive from C.P.L. § 470.15[5], which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." C.P.L. § 470.15[5]; see also People v. Bleakley, 69 N.Y.2d 490, 495.  Because petitioner's weight of the evidence claim is grounded solely in New York State's criminal procedure statute, it is not cognizable on habeas review. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

doubt.'" <u>Dixon v. Miller</u>, 293 F.3d 74, 81 (2d Cir. 2002) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)) (emphasis in original). On habeas review, a court is not permitted to "'make its own subjective determination of guilt or innocence.'" <u>Quartararo v. Hanslmaier,</u> 186 F.3d 91, 97 (2d Cir. 1999) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)).

Here, petitioner claims that the proof presented at trial did not establish evidence of penile penetration.[6] Even if this observation were correct, it does not render the evidence constitutionally deficient. <u>Williams v. McCoy</u>, 7 F.Supp.2d 214 (E.D.N.Y. 1998) (rejecting a claim of insufficient evidence where, in the alleged absence of medical evidence of penile penetration, victim's testimony was sufficient to convince a rational trier of fact that rape had occurred). In the instant case, the victim recounted in explicit detail the repeated acts of vaginal intercourse, sodomy, and sexual touching. T. 329-54. The victim's testimony was not controverted, and Dr. Coyne testified that his medical findings were consistent with the acts described by the victim.

A review of the proof submitted in this case establishes that "any rational trial of fact" could have found that petitioner

_____

[6] The court instructed the jury that a "person is guilty of Rape in the First Degree when he engages in sexual intercourse with another person to whom he is not married and that person is incapable of consent by reason of being less than eleven years old" and that "sexual intercourse" has "its ordinary meaning and occurs upon any penetration, *however slight*." T. 341-42.

committed the sexual acts. Although the claim was unpreserved for appellate review, the Appellate Division alternatively ruled that petitioner's sufficiency and weight of the evidence claims were without merit. Accordingly, that decision was not contrary to or an unreasonable application of federal law. See <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).

### B. Improperly Admitted Testimony

In Grounds Three and Four, petitioner contends that the trial court erred in 1) allowing the victim's out-of-court statement as an exception to the hearsay rule; and 2) admitting petitioner's admission that the victim was "truthful". Pet. ¶ 22(C)-(D).

Generally, alleged evidentiary errors by a state trial court do not rise to the level of a federal constitutional violation. <u>See Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (stating that a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States;" it is not the province of a federal habeas court to re-examine state court determinations of state law). The Second Circuit has explained that "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.' " <u>Dunnigan v. Keane</u>, 137 F.3d 117, 125 (2d Cir.1998), <u>cert. denied</u>, 525 U.S. 840(1998) (quoting <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990)).

Under New York law, evidence of a "prompt outcry" is admissible to corroborate the allegation that a sexual assault took place. See People v. McDaniel, 81 N.Y.2d 10 (1993)(holding that only the fact of a complaint and not its accompanying details are admissible under the "prompt outcry" hearsay exception). With respect to Jefferson's testimony of the victim's complaint of abuse, the Appellate Division held that "[a]lthough the court erred in permitting the witness to provide details of the disclosure, the error is harmless. The evidence is overwhelming and there is no significant probability that defendant would have been acquitted but for the error." Ridgeway, 295 A.D.2d at 880 (citing People v. Rice, 75 N.Y.2d 929, 932 (1990)). As discussed above, an erroneous evidentiary ruling will not entitle a petitioner to habeas relief unless the error was of a constitutional dimension. Rosario v. Kuhlman, 839 F.2d 918 (2d Cir. 1988). Petitioner's claim asserts only a violation of a state evidentiary rule, and cannot provide a basis for habeas corpus relief. Kirkby v. Filion, 2009 WL 2432341 (W.D.N.Y. Aug. 7, 2009)(erroneous admission of testimony by victim's mother under "prompt outcry" exception did not render petitioner's trial fundamentally unfair).

The Appellate Division found that the error was harmless. On habeas review, harmless error analysis hinges on "whether, in light of the record as a whole, the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'"

Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)(quoting Kotteakos v. United States, 328 U.S. 759, 776 (1946)). Under this standard, the erroneously admitted testimony cannot be said to have had a "substantial and injurious effect" on the jury's verdict, considering that the prosecution's case relied primarily on the victim's rousing testimony detailing the acts of abuse in conjunction with Dr. Coyne's examination results. As a result, petitioner's trial was not "fundamentally unfair" due to the error and habeas relief is not warranted for this claim.

Petitioner further challenges the admission of his statement to police that the victim was a "good girl, truthful, understanding, a decent person, decent child." T. 390. Petitioner did not object at trial, and the Appellate Division dismissed the claim for failure to preserve it for review.[7] Ridgeway, 295 A.D.2d at 880 (citing C.P.L. § 470.05(2)). It is therefore procedurally barred, and, in any event, is without merit. "Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived [him] of a *fundamentally fair* trial." Taylor v. Curry, 708 F.2d 886, 890-91 (2d Cir.), cert. denied, 464 U.S. 1000

---

[7] New York's "contemporaneous objection rule", codified at C.P.L. § 470.05(2), is a firmly established and regularly followed rule, and constitutes an adequate and independent state ground for rejecting claims of evidentiary error. Campbell v. Poole, 555 F.Supp.2d 345, 370 (W.D.N.Y. 2008) (citing Fernandez v. Leonardo, 931 F.2d 214, 216 (2d Cir.), cert. denied, 502 U.S. 883 (1991).

(1983). Petitioner has made no such showing, and this claim is therefore dismissed.

## C.    **Harsh and Excessive Sentence**

Petitioner next avers that his sentence of imprisonment of fifteen years is "unduly harsh and excessive." Pet. at Attach. 8A. The assertion that a sentencing judge abused his or her discretion in sentencing is not a cognizable federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948)). Further, no federal constitutional issue is presented where the sentence falls within the range prescribed by state law. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). Here, petitioner's sentence falls within the maximum sentence authorized by New York State law. See N.Y. Penal Law § 70.80. Therefore, his claim regarding the length of his sentence is dismissed as not cognizable on federal habeas review.[8]  See White, 969 F.2d at 1383; accord, e.g., May v. Donelli, 615 F.Supp.2d 88 (W.D.N.Y. 2009).

---

[8] As a separate ground for relief, petitioner challenges the imposition of a five-year period of post-release supervision, which the trial court did not specify at the time of sentencing, "thus implying that the court may have wanted to give petitioner a lesser period of supervision." Pet. at Attach. 8D. The state court denied petitioner's C.P.L. § 440.20 motion to set aside his sentence, observing that "Post release supervision is mandatory for determinate sentences and is automatically included in the sentence. The period of post release supervision on a class B violent felony is five years unless the court specifies a shorter period. Therefore, a court is not required to specify the period of post release supervision at sentencing." Decision and Order, No. 1999-492, dated 5/3/2003. As stated above, petitioner has not raised a cognizable constitutional issue and the Court need not separately address the issue.

**D.  Grand Jury Claims**

Petitioner argues that the prosecution deprived him of the right to appear and testify before the grand jury pursuant to C.P.L. § 190.50; and that the district attorney incorrectly administered the oath to the victim at the grand jury.  Pet. at Attach 8A. Claims of deficiencies in state grand jury proceedings are generally not cognizable in a habeas corpus proceeding in federal court. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); see also Dixon v. McGinnis, 492 F.Supp.2d 343, 347 (S.D.N.Y. 2007) (because the law that guarantees a criminal defendant's right to testify before the grand jury is embodied in a New York state statute and not the United States Constitution, a petitioner's claim that he was deprived of his right to testify before the grand jury "cannot stand as a ground for federal habeas relief"). Petitioner's arguments concerning the alleged infirmities at the grand jury are dismissed because these issues are foreclosed from habeas review. Lopez, 865 F.2d at 32 ("'[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt.  Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.'")(quoting U.S. v. Mechanik, 475 U.S. 66, 70 (1986)).

**E.    Ineffective Assistance of Trial Counsel**

Petitioner attacks his trial counsel's effectiveness on the grounds that trial counsel denied petitioner the ability to defend himself by failing to call certain witnesses and because counsel did not consult with or call a medical expert on petitioner's behalf. Pet. at Attach. 8C, 8D. In rejecting petitioner's C.P.L. § 440.10 motion for *vacatur* on the merits, the state court issued a four-page decision analyzing each of petitioner's bases for ineffective assistance of trial counsel. <u>See</u> Decision and Order, No. 1999-492, dated 4/28/2004. This Court finds no reason to disturb the state court's finding.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." <u>Id.</u> To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide

range of reasonable professional assistance." <u>Id.</u> at 689.  A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," <u>Id.</u>, and may not second-guess defense counsel's strategy.  <u>Id.</u> at 690.

### 1.  **Failure to Call Witnesses and Present a Defense**

Petitioner's assertions that his assigned counsel failed to call family members as witnesses and failed to present an overall defense on petitioner's behalf are unfounded.  First, petitioner does not demonstrate that his mother and sisters would have provided non-cumulative testimony to aid in his defense. <u>See</u> Pet'r Reply Br. , Ex. A.  "The failure to call cumulative or repetitive witnesses is neither ineffective nor prejudicial."  <u>Skinner v. Duncan</u>, 2003 WL 21386032 at *38 (S.D.N.Y. June 17, 2003) (citing cases). His decision not to call Rosa Ridgeway, Ella Robinson, or Mary Bobb, was clearly a tactical decision, and does not need to be disturbed here. <u>See</u> <u>Trapnell v. United States</u>, 725 F.2d 149, 155 (2d Cir. 1983) ("We have repeatedly noted our reluctance to second-guess matters of trial strategy simply because the chosen strategy was not successful.")

Second, there is nothing in the record that suggests that counsel was unfamiliar with petitioner's case or that he failed to prepare an adequate defense. To the contrary: trial counsel filed the appropriate motions (including a motion to dismiss the

indictment for insufficiency, contrary to petitioner's assertion) and made the appropriate arguments at all stages of petitioner's case. Counsel was familiar with the file and the Grand Jury proceedings, and, as the 440.10 court observed, used that information to effectively cross-examine the prosecution's witnesses. During summation, counsel called the victim's credibility into doubt, citing her age, past history of abuse, and accurately pointed out that some of the victim's testimony was confused or non-responsive. He emphasized the lack of medical evidence affirmatively indicating sexual abuse. Such conduct cannot be said to be "deficient" within the meaning of <u>Strickland</u> and was thus not prejudiced by his attorney's representation.

## 2.   Failure to Call Medical Expert

With respect to petitioner's argument that trial counsel should have consulted with and called as a witness an expert to refute the testimony offered by Dr. Coyne, the Court rejects this claim. The Second Circuit has held that under certain circumstances involving sexual offenses, the failure to call an expert witness may be grounds for an ineffective assistance of counsel claims. <u>See</u> <u>Lindstadt v. Keane,</u> 239 F.3d 191 (2d Cir. 2001); <u>Pavel v. Hollins</u>, 261 F.3d 210 (2d Cir. 2001); <u>Gersten v. Senkowski</u>, 426 F.3d 588 (2d Cir. 2005). Here, however, counsel's decision not to consult with a medical expert was not objectively unreasonable, nor did it prejudice the petitioner. On cross-examination, Dr. Coyne

acknowledged that the "new" findings (odorous discharge and erythema) were "not necessarily" related to sexual abuse. T. 446. Counsel further elicited from the prosecution's witness that he could not state with medical certainty that the victim's lesions were caused by penile penetration. T. 450. In this regard, Dr. Coyne's testimony established that based on his findings from his physical examination of the victim, it was possible to conclude that the she had not been sexually assaulted, and that the physical findings could be attributable to other causes. Had defense counsel called his own medical witness, the testimony would likely have established "essentially the same facts that defense counsel was able to demonstrate on cross-examination." Jackson v. Yates, 2008 WL 111232 at *10 (N.D.Cal. Jan. 9, 2008).

Moreover, the instant case is distinguishable from both Lindstadt and Pavel wherein the failure to call a medical expert was an error which, in combination with other errors, amounted to ineffective assistance of counsel. See e.g., Gersten v. Senkowski, 426 F.3d 588, 611 (2d Cir. 2005) ("In evaluating prejudice, we look to the cumulative effect of all of counsel's unprofessional errors." (citing Lindstadt, 239 F.3d at 204). In the instant petition, there is no evidence in the record to suggest that counsel failed to make proper inquiry into the physical evidence. Even if the Court were to fault counsel's strategic decision not to call its own medical witness, in the aggregate, counsel's conduct

did not rise to the level of ineffective assistance under Strickland as discussed *infra*, IV.E.2. Cf. Pavel, 261 F.3d at 218 (ineffective assistance found where attorney labored under the assumption that the charges would be dismissed and did not prepare a defense; decision not to call expert witnesses was related to the goal of merely "avoiding work.") Strickland requires the petitioner to demonstrate that defense counsel erred so seriously "that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 694. Petitioner makes no such showing, nor can he establish that but for counsel's deficiency, the result of his trial would likely have been different. As a result, the state court did not unreasonably apply or rule contrary to settled federal law as set forth by Strickland v. Washington.

### F. Ineffective Assistance of Appellate Counsel

Petitioner goes on to argue that he received ineffective assistance of appellate counsel because he failed to raise the issue of ineffective trial counsel on direct appeal. Pet. at Attach 8B. The Appellate Division rejected this claim in denying petitioner's motion for writ of *error coram nobis.* People v. Ridgeway, 309 A.D.2d 1311 (4th Dept. 2003).

A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as a claim of ineffective assistance of trial counsel. Mayo v. Henderson, 13 F.3d 528, 533

(2d Cir. 1994) (citing <u>Claudio v. Scully</u>, 982 F.2d 798, 803 (2d Cir. 1992), <u>cert. denied</u>, 508 U.S. 912 (1993)). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. <u>Mayo</u>, 13 F.3d at 533-34; <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000); <u>Aparicio v. Artuz</u>, 269 F.3d 78, 95 (2d Cir. 2001).

Appellate counsel "need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." <u>Smith v. Robbins</u>, 528 U.S. at 288 (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 750-54 (1983)). The habeas court should not second-guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. <u>Jones</u>, 463 U.S. at 754; <u>see also</u> <u>Jackson v. Leonardo</u>, 162 F.3d 81, 85 (2d Cir. 1998). Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Mayo</u>, 13 F .3d at 533. Because there is no indication that petitioner received ineffective assistance of trial counsel, the omission of such a claim is well within the realm of "reasonable professional judgments." A review of the record indicates that

appellate counsel pursued five of petitioner's strongest issues on appeal, and was thus not objectively unreasonable in omitting the ineffective assistance of trial counsel claim. The Court accordingly finds that the Appellate Division's rejection of petitioner's ineffective assistance of appellate counsel claim did not run afoul of clearly established Supreme Court precedent articulated in Strickland.

## IV. Conclusion

For the reasons stated above, Russell Ridgeway's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because the petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g. Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    October 21, 2009
          Rochester, New York